# A

## EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT is entered into as of the Effective Date between Employer and Employee. Capitalized terms used, but not otherwise defined, herein shall have the meanings given to them in the term sheet attached hereto as Exhibit A (the "Term Sheet").

1. **EMPLOYMENT**

1.1 Employment with Employer. During the Term, Employer will employ Employee in the Position and Employee agrees to: (i) perform services exclusively for Employer on a full time basis in accordance with the requirements of Employee's Position for the Station; (ii) at the option of the Employer, perform services for (a) newscasts on the Station which are in addition to or instead of the newscasts which are broadcast by the Station on the Effective Date ("Additional Newscasts"), and/or (b) any other television station or stations in the DMA which are owned and/or programmed by Employer or any affiliate thereof, or for which Employer, or an affiliate thereof, otherwise provides services (the "Other Station(s)"), and/or (c) any news to be distributed by Employer or any affiliate thereof (the "Distributed Newscasts") to one or more television stations owned and/or programmed by any affiliate of Employer or any news to be distributed by Employer or any subsidiary or affiliate of Employer for which Employer, or an affiliate of Employer otherwise provides services; provided, the services to be performed with respect to Additional Newscasts, the Other Station(s), and/or the Distributed Newscasts shall not materially increase the length of Employee's normal workday performed in accordance with Employee's duties at the Station; and (iii) perform such other duties including, without limitation, writing, reporting, editing, producing, photographing and managing assignments, as well as public relations activities for promoting the Station and promoting Employee as a personality identified with the Station, as are directed by Employer in Employer's sole and absolute discretion.

1.2 Use of Employee's Services. Employee will not authorize or permit the use of Employee's name, voice and/or likeness in connection with any activity, except as authorized in writing by the News Director and/or General Manager of the Station. Nothing in this Agreement shall obligate Employer to use Employee's services on any program of the Station or prohibit Employer from changing or altering from time to time the Station's program scheduling including, without limitation, the time, day, length, content, format and frequency of any program. Employer shall have fully discharged its obligations under this Agreement by paying Employee the consideration set forth herein.

1.3 Employee's Personal Appearance. Employee acknowledges and agrees that his/her employment is based upon, among other things, Employee maintaining a certain physical appearance. Employee agrees not to materially alter his/her physical appearance, except as authorized in writing in advance by the News Director and General Manager. Employee acknowledges and agrees that Employee may be asked to make certain reasonable changes to his/her physical appearance, including without limitation, hair color, facial cosmetics, and/or removal of facial hair.

2. **TERM.** This Agreement shall commence on the Effective Date and expire at the end of the Term, unless earlier terminated pursuant to this Agreement.

3. **COMPENSATION AND OTHER BENEFITS.**

3.1  Base Compensation. As full payment for all services rendered by Employee under this Agreement, Employer shall pay Employee the Base Compensation, in accordance with Employer's customary payroll practices. In the event Employer announces a company-wide salary freeze, Employee acknowledges that Employer may freeze Employee's Base Compensation until Employer, as a general policy, has lifted the freeze. Employer reserves the right to lift the freeze on a station-by station basis.

3.2  Bonus Compensation. In addition to such Base Compensation, and subject to the terms and conditions hereinafter set forth, Employee shall be eligible to receive the Bonus Compensation, if any. To be eligible to receive Bonus Compensation, if any, Employee must be employed by Employer through the end of the relevant ratings period.

3.3  Other Benefits.

(a)  Except to the extent otherwise provided in the Term Sheet or in this Agreement, in addition to such Base Compensation, Employee shall receive the employee benefits as may then be applicable to Employee under the Sinclair Broadcast Group, Inc. (or any permitted assignee) employee handbook, as such handbook may be amended or revised from time to time (as so amended or revised the "Employee Handbook"). Employee hereby agrees not to take any vacation during any rating period in which Employer's audience or market share is being counted or determined. Employee agrees that if Employee's employment is terminated (i) by Employee at any time during the Term in violation of this Agreement; or (ii) by Employer for Cause, as defined in Section 8.1(b) (with the exception of Section 8.1(b)(iv), then Employee shall not be entitled to any payment for unused vacation or personal leave.

(b)  Employee shall be entitled to receive the Other Benefits, if any, specified on the Term Sheet.

(c)  To the extent taxable to Employee, Employee shall be responsible for accounting for and payment of taxes on the benefits provided Employee by Employer.

4. **CREDITS AND PROPERTY RIGHTS.** Employee hereby assigns and conveys to Employer any and all proprietary rights in or to any material furnished by Employee to Employer under this Agreement, and in any program(s) in which Employee appears, regardless of any contributions made by Employee. Employer shall have the right (without additional compensation to Employee) to broadcast, modify, sell, syndicate, license, lease, give or use in any way determined by Employer any of the aforementioned programs or materials to any person, corporation, partnership or entity or destroy any of the aforementioned programs or materials.

5. **PAYOLA.** Employee shall comply with all provisions of the Communications Act of 1934, as amended (the "Communications Act"), and the rules and regulations of the Federal Communications Commission ("FCC") or any other government agency which may regulate the

Station's business including the FCC rules governing "payola" and sponsorship identification. Employee acknowledges that he has read and understands the obligations and prohibitions pursuant to the Communications Act and the FCC regarding "Payola" and sponsorship identification.

6. **POLITICS.** During the term of this Agreement, Employee will not participate in politics as a candidate, publicly endorsing a party or candidate, or actively working on behalf of a candidate or party. Employee agrees that at no time will Employee directly or indirectly express Employee's personal political viewpoints during any broadcast in which Employee appears.

7. **NON-DISCLOSURE OF CONFIDENTIAL AND PROPRIETARY INFORMATION.** Employee agrees that Employee shall not, either during the Term of this Agreement or any time thereafter, directly or indirectly, disclose to any third party, or use in any way which would be detrimental to the Employer, any confidential or other proprietary information relating to the business of Employer and the Employer Entities (as hereinafter defined) and not generally known to the public.

Immediately upon termination of Employee's employment under this Agreement for any reason or upon Employer's request, Employee shall return to Employer all materials and property of Employer in the possession or under control of Employee including, without limitation, confidential information and all copies thereof or extracts therefrom.

8. **TERMINATION OF EMPLOYMENT.**

8.1 Termination.

(a) Notwithstanding anything in this Agreement to the contrary, Employer and Employee agree that the Term of this Agreement and Employee's employment hereunder shall terminate and the parties shall not have any further rights or obligations under this Agreement (except as specified in Section 14.1 of this Agreement) after the earliest to occur of the following events (the "Termination Date"):

(i) death of Employee;

(ii) disability of Employee (including but not limited to any which limits Employee's ability to present a pleasant personal appearance and a strong, agreeable voice) which Employer determines renders Employee unable to perform the essential functions of Employee's job even with reasonable accommodation;

(iii) termination by Employer for Cause (as hereinafter defined);

(iv) any anniversary of the Effective Date if Employer has provided at least sixty (60) days advance, written notice of termination on any such anniversary (other than the last day of the Term with respect to which no notice of termination shall be required);

    (v)    the Required Number Of Days after written notice of termination of Employee's employment by Employer without Cause;

    (vi)    expiration of the Term;

    (vii)    subject to Employer's right of first refusal, if any, specified in the Term Sheet, sixty (60) days (or such shorter period specified by Employer) after written notice of termination of Employee's employment by Employee for a Permitted Reason, if any, subject to such restrictions thereon as are set forth in the Term Sheet and as follows herein; <u>provided</u>, at Employer's option, if the effective date of such notice falls within a rating period in which the Station's audience or market share is being determined, then such notice shall not be effective until the end of said rating period.

(b)    For purposes of this Agreement, "Cause" shall mean the following:

    (i)    the commission by Employee of any act (including any felony or any crime involving moral turpitude) or Employee's involvement in any situation or occurrence, which brings Employee into public disrepute, contempt, scandal, or ridicule, or which shocks, insults, or offends the community, or which casts doubt upon Employee's journalistic fairness or credibility or which reflects unfavorably upon Employee, Employer or the Station, as reasonably determined by Employer;

    (ii)    any action by Employee which may jeopardize an FCC license of any broadcast station owned or programmed by Employer or any of the Employer Entities or any action by Employee which may jeopardize an FCC license of any broadcast station for which Employer, or any of the Employer Entities, otherwise provides services or the violation by Employee of any local, state or federal laws, or rules or policies of the FCC or any other governmental agency which may regulate Employer's business or the business for which Employer or any of the Employer Entities provides services, the effect of which is likely to be adverse to the Station or Employer or any of the Employer Entities which provides such services, as reasonably determined by Employer;

    (iii)    the breach by Employee of any representation, warranty, covenant, or provision of this Agreement;

    (iv)    the elimination of the news program on which Employee performs services;

    (v)    if Employee is intoxicated, or uses, possesses, traffics in, or is under the influence of any drug which is not prescribed by a physician for Employee or available over-the-counter, while performing Employee's duties or while on Station premises;

    (vi)    Employee's violation of any of Employer's policies including, without limitation, policies set forth in the Employee Handbook as to drug or alcohol abuse;

 (vii) Employee's failure to follow the directives of Employer, the News Director of the Station (or the News Director's designee);

 (viii) dishonesty of Employee including, without limitation, theft or misappropriation by Employee of Employer's funds or property;

 (ix) Employee's insubordination or other misconduct as determined by Employer in its reasonable discretion.

8.2 Termination Payments.

 (a) If Employee's employment with Employer is terminated in accordance with Section 8.1 (in lieu of any termination or severance payments otherwise required by Employer policy), Employee will be entitled to receive, and Employer will pay, only the Base Compensation earned and payable to Employee through the Termination Date; provided, in Employer's sole discretion, rather than providing the advance notice of termination required by Sections 8.1(a)(iv) and 8.1(a)(v), Employer may pay Employee, in addition to the Base Compensation earned and payable to Employee through the Termination Date, the Base Compensation for the Required Number of Days of advance notice of termination to which Employee was otherwise entitled, but did not receive; provided further, in the event Employee transfers or becomes employed by an Employer Entity (as hereinafter defined) within the Required Number of Days, then Employer will pay Employee the Base Compensation only until the earlier of (i) the effective date of Employee's employment with the Employer Entity, or (ii) the end of the Required Number of Days.

 (b) If Employee's employment with Employer is terminated (i) by Employee at any time during the Term in violation of this Agreement; or (ii) by Employer for Cause, as defined in Section 8.1(b) (with the exception of Section 8.1 (b)(iv)) prior to the first anniversary of the date hereof; Employee shall reimburse Employer promptly after the Termination Date for the total amount of payments made by Employer (or the value of any advertising provided by Employer in trade) for Other Benefits. Employee covenants and agrees that, upon the request of Employer, Employee shall execute and deliver to Employer a promissory note and such other documents reasonably requested by Employer evidencing Employee's reimbursement obligations hereunder.

 (c) In consideration of Employer's expenditure of considerable money, time and effort in training, promoting and assimilating the Employee into Employer's business and operations, Employee agrees that (i) if Employee voluntarily terminates this Agreement other than in accordance with the provisions of Section 8 of this Agreement, or (ii) Employer terminates this Agreement pursuant to Section 8.1(a)(iii), with the exception of Section 8.1 (b)(iv), at Employer's option (such option to be exercisable in Employer's sole discretion), Employee will immediately pay to Employer as liquidated damages (and not as a penalty) an amount equal to forty percent (40%) of Employee's then annual compensation multiplied by a

percentage equal to the greater of (a) twenty-five percent (25%), or (b) the percentage of the current contract year remaining after such termination. If Employer does not exercise the option provided for in this Section 8.2 (c), Employer shall have the right to seek any and all remedies and damages available as a result of Employee's breach of this Agreement. Whether or not Employer exercises such option, Employee shall continue to be bound by the provisions of this Agreement, including (without limitation) those contained in Sections 7 and 11.

9. **EMPLOYMENT SUSPENSION** In any case in which Employer has the right to terminate the employment of Employee for Cause under Section 8.1(a)(iii), Employer shall have the right, exercisable by providing written notice to Employee, to suspend the provision of services provided by Employee under this Agreement, without compensation of any kind, for a period not to exceed sixty (60) days. The election by Employer to suspend the services provided by Employee shall not preclude a subsequent election by Employer to terminate this Agreement.

10. **EMPLOYER POLICIES** Employee agrees to comply with all of Employer's policies including, without limitation, those set forth in the Employee Handbook.

11. **COVENANT NOT TO COMPETE AND NOT TO SOLICIT.**

11.1 Non-Competition.

(a) In view of the unique value of Employee's services and as a material inducement to Employer to enter into and comply with this Agreement, Employee agrees that during the Term, and, in the case of subsection (i) hereof, for a period of one hundred eighty (180) days after the termination of Employee's employment under this Agreement and, in the case of subsections (ii) and (iii) hereof, for a period of one (1) year after the termination of Employee's employment under this Agreement, Employee will not in any manner, directly or indirectly, whether or not for compensation:

(i) render any services for, lend one's name to, acquire any direct or indirect interest in, or otherwise participate in or be connected in any manner with: (x) any radio or television station, whose transmitter is located within the DMA (other than, during the Term, the Station), (y) any subscription broadcast service or cable television system operator which is based or licensed to conduct business in, or whose signal is transmitted from, the DMA, or (z) any person or entity including, without limitation, telephone companies, cellular companies, direct satellite companies and on-line computer companies, not described in subsections (x) or (y) hereof which transmits or otherwise offers news or other programs or services to or from the DMA, which programs or services are similar or related to any programming or services of the Station;

(ii) hire, solicit, encourage, or interfere with (or attempt to do so or assist others in doing or attempting to do so), any employee or independent contractor of Employer, or any entity that is controlled by, controlling or under common control with, Employer (collectively, the "Employer Entities") or any person

        who was an employee of Employer or any of the Employer Entities within the one (1) year period immediately preceding the Termination Date; or

    (iii)    solicit or divert (or attempt to do so or assist others in doing or attempting to do so), in competition with Employer or any of the Employer Entities, the business of any customer or sponsor of Employer or any of the Employer Entities or any person or entity whose business Employer or any of the Employer Entities solicited during the one (1) year period immediately preceding the Termination Date.

(b)    The one hundred eighty (180) day and one (1) year time periods, as the case may be, referred to in subsection (a) above shall be tolled on a day-for-day basis for each day during which Employee participates in any activity in violation of the applicable subsection(s) of this Section 11, so that Employee is restricted from engaging in the conduct referred to in this Section 11 for a full one hundred eighty (180) day or one (1) year period, as the case may be.

(c)    Notwithstanding anything else contained in this Section 11.1, Employee may own, for investment purposes only, up to five percent (5%) of the stock of any publicly-held corporation whose stock is either listed on a national stock exchange or on the NASDAQ National Market System if Employee is not otherwise affiliated with such corporation.

11.2    Acknowledgment. Employee acknowledges and agrees that Employee has carefully read and considered the provisions of this Section 11 and, having done so, agrees that the restrictions contained in this Section 11 including, but not limited to, the scope of the restrictions, the time period of the restrictions and geographical areas of restriction, are reasonable and necessary in order to protect the legitimate interests of Employer and the Employer Entities.

11.3    Enforceability. In the event that any provision of this Section 11 relating to the time period and/or the geographical areas of restriction and/or related aspects shall be declared by a court of competent jurisdiction to exceed the maximum restrictiveness such court deems reasonable and enforceable, the time period and/or geographical areas of restriction and/or related aspects deemed reasonable and enforceable by the court shall become and thereafter be the maximum restriction in such regard, and the restriction shall remain enforceable to the fullest extent deemed reasonable by such court.

12.    **REMEDIES** The parties recognize and agree that Employee's breach of this Agreement will cause Employer irreparable injury which cannot reasonably or adequately be compensated in damages in an action at law. The parties acknowledge and agree that, in the event of any violation or threatened violation of this Agreement, Employer shall be entitled to obtain, from any court of competent jurisdiction, temporary, preliminary and permanent injunctive relief, as well as an equitable accounting of all profits or benefits arising out of such violation. The parties acknowledge that Employer's remedies for a violation or threatened violation of this Agreement are not subject to the arbitration provisions of Section 15 of this Agreement. Resort by Employer to injunctive or other equitable relief shall not be construed as a waiver of any other remedies, legal or equitable, or rights Employer may have against Employee, which other rights and remedies shall be cumulative and in addition to such injunctive or equitable relief.

sd\sadie hughes agreement3

13. **WARRANTIES**.

13.1 Absence of Restrictions. Employee represents and warrants that Employee has the unrestricted right to enter into this Agreement and that there are no contracts or agreements, whether expressed or implied, employment or otherwise, between Employee and any other person or entity that will restrict Employee from performing fully the obligations pursuant to this Agreement.

13.2 Representation by Counsel. Employee represents and warrants that Employee has had the opportunity to discuss this Agreement with a representative or attorney of Employee's choice and that Employee has read and understands the meaning of each provision of this Agreement.

14. **MISCELLANEOUS**.

14.1 Survival of Covenants. The covenants and agreements contained in Sections 1, 4, 7, 8, 11, 12, 14 and 15 shall survive any expiration or termination of this Agreement and shall continue for an indefinite period of time thereafter, except as specified in this Agreement.

14.2 Governing Law and Venue. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE IN WHICH THE STATION IS LOCATED (REGARDLESS OF THE LAWS THAT MIGHT BE APPLICABLE UNDER PRINCIPLES OF CONFLICTS OF LAW) AS TO ALL MATTERS. THE FORUM FOR ANY LITIGATION HEREUNDER SHALL BE THE STATE COURT WITH ORIGINAL JURISDICTION SITUATED IN THE STATE WHOSE STATE LAW GOVERNS THE AGREEMENT OR ANY FEDERAL DISTRICT COURT WITH ORIGINAL JURISDICTION SITTING IN THE STATE WHOSE STATE LAW GOVERNS THE AGREEMENT, PROVIDED THAT ANY ARBITRATION PURSUANT TO SECTION 15 OF THIS AGREEMENT WILL BE HELD IN THE CITY IN WHICH THE STATION IS LOCATED.

14.3 Waiver of Breach. The waiver by either party of any provision of this Agreement or any breach of any provision of this Agreement by the other party shall not operate or be construed as a waiver of any subsequent breach. No waiver by Employer shall be valid unless in writing and signed by an authorized officer of Employer.

14.4 Assignability. In recognition of the uniqueness of Employee's services hereunder, this Agreement and Employee's rights and obligations hereunder may not be assigned by Employee and any attempt to do so is void. However, Employee acknowledges and agrees that Employer may assign this Agreement and its rights and obligations under this Agreement to another party. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors and permitted assigns.

14.5 Entire Agreement; Modification. This Agreement (including the Term Sheet incorporated herein by reference and attached hereto) contains the entire agreement of the parties with respect to the subject matter hereof and supersedes any prior written or oral understandings or agreements between the parties with respect to the subject matter hereof, including without limitation the Employment Agreement between Sinclair Communications, LLC and Sadie Beth Hughes dated August 18, 2013, which is hereby terminated. This Agreement may not be

modified or amended, nor may any provision hereof be waived, except by a writing signed by Employee and an authorized officer of Employer.

14.6   Counterparts. This Agreement may be executed in two counterparts, each of which shall be deemed an original and both of which together shall be considered one agreement.

14.7   Severability. All rights, powers and remedies provided herein may be exercised only to the extent that the exercise thereof does not violate any applicable laws and are intended to be limited to the extent necessary so that they will not render this Agreement invalid or unenforceable. If any term or provision of this Agreement shall be held to be invalid, illegal, or unenforceable, the legality, validity, and enforceability of the other terms and provisions shall in no way be affected thereby and said illegal, unenforceable or invalid term or provisions shall be deemed not to be part of this Agreement to the extent illegal, unenforceable or invalid.

14.8   Attorney Fees. In the event of any action, arbitration proceeding or litigation (collectively, the "Action") between the parties arising out of or in relation to this Agreement, Employer, if the prevailing party in such litigation, shall be entitled to recover, in addition to any damages, injunctions, or other relief and without regard to whether the Action is prosecuted to final appeal, all of its costs and expenses including, without limitation, reasonable attorney's fees, from the Employee.

14.9   Headings. The descriptive headings of the Sections of this Agreement are inserted for convenience only and are not part of this Agreement.

14.10 Notices. Any notices or other communications required or permitted hereunder will be sufficiently given if in writing and delivered by hand, sent by overnight delivery service and/or sent by certified or registered mail, postage prepaid, addressed as indicated on the Term Sheet or to any other address as is furnished in writing by any party. Any such notice or communication shall be deemed to have been given as of the date so hand-delivered, provided to the delivery service or mailed, as applicable.

15.   **ARBITRATION**. Except as specifically provided in Section 12, Employee and Employer agree to submit any dispute or controversy arising out of or relating to this Agreement including, but not limited to, claims of termination allegedly resulting from discrimination of any type, claims based on common law, contract, or statutorily created or protected rights or any other basis prohibited by law, exclusively to final and binding arbitration before a neutral arbitrator.

If Employee and Employer are unable to agree upon a neutral arbitrator, Employer will obtain a list of arbitrators from a state or federal arbitration service. Employer (first) and then Employee will alternately strike names from the list until only one name remains; the remaining person shall be the arbitrator. The arbitrator shall be a licensed attorney bound by the then current qualifications and disclosure provisions and the procedures set forth in the resolution of employment dispute procedures of the American Arbitration Association ("AAA") and shall order such discovery as is appropriate to the nature of the claim and necessary to the adjudication thereof.

The Arbitrator shall determine the prevailing party. Despite the AAA rules, all fees and expenses of the arbitration shall be borne by the non-prevailing party to the arbitration, including,

sd\sadle hughes agreement3

-9-

but not limited to, the cost of experts, evidence, and legal counsel. The parties agree that if the arbitrator is satisfied that Employee did engage in the conduct complained of, the arbitrator is not to determine what discipline the arbitrator would have taken had the arbitrator been in the position of Employer; but rather the arbitrator must uphold the action taken by Employer.

Subject to the parties agreement that Employer's remedies for a violation or threatened violation of Section 1.2, Section 7 or Section 11 of this Agreement are not subject to the arbitration provisions of this Section 15, Employee and Employer agree that this arbitration shall be the exclusive means of resolving any dispute or controversy arising out of or relating to this Agreement, Employee's employment with Employer, or termination of Employee's employment, and that no other action will be brought by Employee in any court or other forum, including but not limited to, claims based on common law, contract, or statutorily created or protected rights.

**NOTICE: THIS AGREEMENT CONTAINS A WAIVER OF YOUR RIGHT TO A TRIAL BY COURT OR JURY IN EMPLOYMENT TERMINATION AND OTHER EMPLOYMENT DISPUTES.**

**THIS AGREEMENT SHALL NOT BE CONSIDERED EXECUTED OR BINDING UNTIL IT HAS BEEN SIGNED BY EMPLOYER.**

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first-above written.

EMPLOYER:

Chesapeake Media I, LLC
A Nevada limited liability company

By: _____
Name: David B. Amy
Title: Manager
Date: 8/21/14

EMPLOYEE

_____
Sadie Beth Hughes

Date: 08-19-14

sd\sadie hughes agreement3

-10-

## EXHIBIT A

## EMPLOYMENT AGREEMENT TERM SHEET

1. For purposes of the Employment Agreement to which this Term Sheet is an Exhibit, the following terms shall have the meanings noted.

"DMA" shall mean Flint, Saginaw, and Bay City, Michigan.

"Effective Date" shall mean September 15, 2014.

"Employee" shall mean Sadie Beth Hughes.

"Employer" shall mean Chesapeake Media I, LLC.

"Station" shall mean WEYI.

"Position" shall mean Anchor and Reporter.

"Term" shall mean the period beginning September 15, 2014 and ending September 14, 2017.

2. Employee's annual rate of compensation ("Base Compensation") shall be equal to the amount(s) set forth below with respect to the period(s) set forth below:

September 15, 2014 to September 14, 2015: Eighty Five Thousand Dollars ($85,000).

September 15, 2015 to September 14, 2016: Eighty Seven Thousand Five Hundred Fifty Dollars ($87,550).

September 15, 2016 to September 14, 2017: Ninety Thousand One Hundred Seventy Six Dollars ($90,176).

Employee acknowledges that because of the nature of Employee's job duties, as well as Employee's level of responsibility, past experience, education and training, Employee is not eligible for overtime compensation in accordance with applicable federal and state law. Accordingly, regardless of the number of hours Employee works, Employee shall not be eligible to receive overtime compensation.

3. Employee's right to a bonus ("Bonus Compensation") shall be as specified below:

During the Term of the Agreement, Employee shall be eligible to receive Bonus Compensation in the amount of Five Hundred Dollars ($500) for each one (1.0) point increase in share for the Adults 25-54 demographic during each of the February, May, and November ratings periods as compared to the same ratings period for the previous year for each of the Station's weekday 6:00 p.m. and 11:00 p.m. newscasts in which Employee appears, as determined by the "pure program" portion of The A.C. Nielsen Company rating book.

Bonus Compensation shall be limited to Three Thousand Dollars ($3,000) per ratings period. The aggregate amount of Bonus Compensation shall not exceed Nine Thousand Dollars ($9,000) per contract year.

Bonus Compensation, if any, shall be paid by Employer to Employee in following the release of the February, May, and November ratings by The A.C. Nielsen Company, respectively and in accordance with Employers regular approval and payroll practices.

4. In addition to any compensation or other benefits due Employee as specified in the Employment Agreement, Employee shall be entitled to receive the following benefits (the "Other Benefits");

 a. Annual Benefits by trade or cash, at Employer's discretion (which benefits shall be accrued monthly on a pro-rata basis while Employee is active): clothing allowance in the amount of Three Thousand Dollars ($3,000). Employee acknowledges and agrees that such clothing allowance will be paid upon the presentation of receipts for clothing acceptable for on-air use and in accordance with Employer's standard payroll practices. Employee further acknowledges and agrees that such clothing allowance shall exclude athletic shoes, undergarments, outerwear (unless approved in writing in advance by the News Director), accessories, dry cleaning, makeup and hairstyling services.

 In the event Employee's employment is terminated for any reason, then effective immediately upon such notice of termination, Employee's rights to receive Annual Benefits shall cease. Further, unused Annual Benefits cannot be carried over to another contract year.

 b. Employee shall receive a one-time signing bonus in the amount of Eight Thousand Five Hundred Dollars ($8,500) ("Signing Bonus") for moving expenses and temporary housing costs in connection with Employee's employment by Employer, provided, that Employee signs and returns this Employment Agreement to Mary Speer on or prior to August 20, 2014. Such Signing Bonus shall be payable on the next payroll date after execution of this Agreement by both parties in accordance with Employer's standard payroll practices.

5. Employer shall give sixty (60) days of notice prior to termination without cause (the "Required Number of Days").

6. Subject to Employer's right of first refusal, if any, Employee shall be permitted to terminate the Employment Agreement pursuant to Section 8.1(a)(vii) solely for the following reason (a "Permitted Reason"):

 Sixty (60) days after Employee has received and accepted and notified Employer of her acceptance (and not withdrawn such acceptance) of a bona fide written offer of employment to serve as an anchor or anchor/reporter (i) at a television broadcast station located in a Top 20 television market as designated by The

sd\sadie hughas terms3

A.C. Nielsen Company, or (ii) for a national broadcast network or national cable network (i.e., ABC, CBS, NBC, FOX, MSNBC, CNN, ESPN, Weather Channel); provided however, such notice is not received by Employer prior to March 15, 2017.

If the effective date of Employee's termination of employment for a Permitted Reason ("Permitted Reason Termination Date") falls within a television rating period in which the Station's audience or market share is being determined, then such Permitted Reason Termination Date shall not be effective until the end of said rating period. Employer may at its option elect to make such notice effective prior to the sixty (60) day period.

7. The following notice addresses shall be used:

| | |
|---|---|
| If to Employer: | WEYI<br>2225 W. Willard Road<br>Clio, MI 48420<br>Attn: General Manager |
| with a copy to: | WEYI<br>c/o Sinclair Television Group, Inc.<br>10706 Beaver Dam Road<br>Cockeysville, Maryland 21030<br>Attn: General Counsel |
| If to Employee: | Employee's address as listed, from time to time, in the personnel records of Employer (or an affiliate thereof). |

THIS AGREEMENT SHALL NOT BE CONSIDERED EXECUTED OR BINDING UNTIL IT HAS BEEN SIGNED BY EMPLOYER.

TERM SHEET Accepted and Agreed to as of _August 19, 2014_:

Employer:

Chesapeake Media I, LLC
A Nevada limited liability company

By: _/s/ David B. Amy/_
Name: David B. Amy
Title: Manager

Employee:

_/s/ Sadie Beth Hughes_
Sadie Beth Hughes

sd\sadie hughes terms3